FILED'06 SEP 22 11:53 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,            06-CR-161-BR

       Plaintiff,                 OPINION AND ORDER

v.

JOEL CALEB CLARK,

       Defendant.


**KARIN J. IMMERGUT**
United States Attorney
**FREDRIC N. WEINHOUSE**
Assistant United States Attorney
1000 SW Third, Suit 600
Portland, OR  97204
(503) 727-1000

        Attorneys for Plaintiff


**STEVEN T. WAX**
Federal Public Defender
**ELLEN C. PITCHER**
Assistant Federal Public Defender
101 S.W. Main St., Suite 1700
Portland, OR  97204
(503) 326-2123

        Attorneys for Defendant


1  -    OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Joel Caleb Clark's Motion to Suppress Evidence and Statements (#15). For the reasons that follow, the Court **GRANTS** Defendant's Motion.

## BACKGROUND

Defendant is charged in a one-count Indictment with being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). In his Motion to Suppress, Defendant seeks an order suppressing all evidence seized in the search of the backpack that he was carrying at the time of his arrest and the statements that he made during interrogation regarding the contents of the backpack. According to Defendant, police officers obtained this evidence and these statements as the result of an unlawful warrantless search in violation of his rights under the Fourth Amendment to the United States Constitution.

On September 12, 2006, the Court conducted an evidentiary hearing on Defendant's Motion and took it under advisement.

## FINDINGS OF FACT

The Court has weighed and evaluated all of the evidence and finds the following facts by a preponderance of the evidence:

1. On March 2, 2006, The Dalles Police Officer Jamie Carrico was patrolling on Court Street in The Dalles, Oregon, in

2 -    OPINION AND ORDER

his marked patrol car and saw Defendant, who was carrying a backpack, and a woman later identified as Candy Parnell. They appeared to be coming down from a hilly area marked "No Trespassing" by the City of The Dalles. Officer Carrico continued to drive for half a block and then turned around in order to investigate why Defendant and Parnell were on this posted property. By the time Officer Carrico returned to the area, however, Defendant and Parnell were gone.

2. Officer Carrico drove another block up the hill and then got out and walked toward a cliff area where he saw Defendant and Parnell. Defendant still had the backpack.

3. Officer Carrico asked Defendant and Parnell to come down from the cliff to speak with him. They refused. Officer Carrico then asked them to wait and said he would come up to talk with them. Although Parnell stayed, Defendant stated he didn't have to wait and then started walking away from Officer Carrico.

4. Defendant picked up his pace, continued over the cliff, and started running away from Officer Carrico still carrying the backpack.

5. Officer Carrico stayed with Parnell and called for assistance from other officers. Defendant ran through a city park, then back towards Officer Carrico, and was apprehended by an undercover police officer a few feet away from Officer Carrico. The undercover officer handcuffed Defendant.

3  -   OPINION AND ORDER

6. Defendant still had the backpack at the time he was detained and handcuffed.

7. Shortly after the undercover officer detained Defendant, Bob Martin, Defendant's Probation Officer (PO), arrived at the scene and observed the backpack at Defendant's feet. PO Martin asked Defendant if it was his backpack. Defendant stated it was not his, but it belonged to a friend.

8. PO Martin asked Defendant whether he would consent to a search of the backpack. Defendant responded he could not consent to a search of the backpack because it did not belong to him. Although PO Martin told Defendant he "could give consent to search" the backpack because it "was in his possession and control," Defendant still refused to consent to a search.

9. Officer Carrico arrested Defendant for criminal trespass and a probation violation, escorted Defendant to the officer's patrol car, and placed Defendant in the back seat. Officer Carrico then placed the backpack in another area of his vehicle away from Defendant.[1]

10. After placing Defendant and the backpack in his patrol car, Officer Carrico was occupied outside of the car for a time.

---

[1] Although Officer Carrico smelled a strong odor of marijuana emanating from the backpack, he did not have any reason to believe that Defendant possessed an amount of marijuana sufficient to trigger criminal penalties. Thus, the government does not contend there was probable cause to search the backpack for drugs.

4  -   OPINION AND ORDER

During that period, Defendant started to move out of the police car. PO Martin told Defendant to get back and physically moved Defendant toward the police car. In response, Defendant said to PO Martin, "I have the same thing you have on your belt in *my pack* and I'm not chicken-shit like you to use it. I am going to use it on you. I am going to get you for this." (Emphasis added.) PO Martin again told Defendant to get back into the patrol car. After Defendant complied, PO Martin closed the car door. PO Martin repeated Defendant's statements to Officer Carrico.

11. Officer Carrico transported Defendant to NORCOR, the regional jail. At NORCOR, PO Martin asked one of the corrections officers to "inventory search" the backpack. The search revealed, among other things, a chrome-plated 9-millimeter Ruger handgun. At that point, Defendant was advised of his *Miranda* rights, and Defendant indicated he understood his rights. Defendant then was questioned about the handgun as well as other items in the backpack. Defendant stated the gun belonged to a friend of his, but he would not identify the friend.

## DISCUSSION

Defendant contends the handgun was seized during an unlawful warrantless search in violation of his rights under the Fourth Amendment. The government concedes the search of the backpack at

5 - OPINION AND ORDER

NORCOR does not qualify as a search incident to arrest, which is an exception to the Fourth Amendment warrant requirement. The government also concedes the "inventory" procedures at NORCOR do not provide any Fourth Amendment justification for the search. The government, however, maintains Defendant abandoned the backpack, and, therefore, the search was lawful.[2]

## I.  The Law

The Fourth Amendment provides in pertinent part:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause.

U.S. Const. amend. IV.  "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)(citations omitted).  The "reasonableness" mandated by the Fourth Amendment generally requires law-enforcement officers to obtain a warrant supported by probable cause before conducting a search.  *Payton v. New York*, 445 U.S. 573, 586 (1980).

"It is firmly established[, however,] that warrantless searches of abandoned property do not violate the Fourth Amendment."  *United States v. Burnette*, 698 F.2d 1038, 1047 (9th

---

[2] The Court notes the government also does not argue there was probable cause to search the backpack because Defendant's statements to PO Martin suggested Defendant, a known felon, was in possession of a firearm.

6   -   OPINION AND ORDER

Cir. 1987). "If a person has voluntarily abandoned property, he has no standing to complain of its search or seizure." *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976)(citing *Abel v. United States*, 362 U.S. 217, 240-41 (1960)). "Only a person whose privacy is invaded by a search has standing to object to it under the exclusionary rule as codified in F. R. Crim. P. 41(e)." *Id.*

"If the person alleged to have abandoned property intends to retain his or her privacy interest in the allegedly abandoned property, there has been no abandonment. Whether a person intends to retain a privacy interest in the property is determined by objective standards." *United States v. Burnette*, 698 F.2d at 1047 (citing *United States v. Kendall*, 655 F.2d 199, 201 (9th Cir. 1981)). To make "this determination, [the court] look[s] to the party's 'words, acts, and other objective facts.'" *Id.* (quoting *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976)).

### B. Analysis

The parties frame the issue in this matter as one of abandonment: Defendant contends he did not abandon the backpack because he retained possession of it and did not give police permission to search it. Thus, he asserts he retained and did not abandon his privacy interest in the backpack. Accordingly, Defendant argues the warrantless search of the backpack by law-

7 -  OPINION AND ORDER

enforcement officers violated his privacy interest in the backpack and his rights under the Fourth Amendment to be free from unreasonable searches. In response, the government contends Defendant abandoned the backpack and, therefore, no longer had a privacy interest in the backpack. Accordingly, the search of the backpack allegedly was reasonable under the Fourth Amendment and did not violate Defendant's rights.

The Court, however, concludes the threshold issue is more properly framed as one of standing: *i.e.*, whether Defendant had any interest, including a possessory interest, that gave rise to an expectation of privacy in the contents of the backpack. As noted, the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." If Defendant did not have a privacy interest in the backpack, the Fourth Amendment is not implicated and the issue of abandonment is moot.

To determine whether Defendant had a privacy interest in the backpack, the Court must look at Defendant's words and acts under "objective standards." The undisputed evidence here, however, includes contradictory positions by Defendant on this issue. On one hand, Defendant told the police on at least two occasions that the backpack did not belong to him. Nevertheless, he consistently refused to give consent to the officers to search the backpack. Moreover, Defendant did not voluntarily let the

8  -   OPINION AND ORDER

backpack out of his possession; *i.e.*, Defendant did not hand over the backpack, leave it behind, or toss it away when he ran out of Officer Carrico's sight despite the fact that he had the opportunity to do so. Finally, when Defendant threatened "to get" PO Martin, Defendant said, "I have the same thing . . . in *my* pack . . . ." (Emphasis added.)

"'The government bears the burden of justifying a warrantless search.'" *U.S. v. Cortez-Rivera*, 454 F.3d 1038, 1041 (9th Cir. 2006)(quoting *United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991)(per curiam)). "The government must prove the existence of an exception to the Fourth Amendment Warrant Requirement by a preponderance of the evidence." *United States v. Vasey*, 834 F.2d 782, 785 (9th Cir. 1987)(citing *United States v. Jeffers*, 342 U.S. 48 (1951); *United States v. Whitten*, 706 F.2d 1000 (9th Cir. 1983)).

On this record and after careful review of the cases cited by counsel, the Court is unable to determine whether Defendant had a privacy interest in the backpack and, if so, whether he abandoned any such interest. As the government conceded during oral argument, the fact that Defendant possessed the backpack and held on to it until his arrest initially gives rise to an inference that he had some Fourth Amendment privacy interest in the backpack. Although Defendant disclaimed

ownership of the backpack, he, nonetheless, asserted in the same time frame that it was "my pack" and repeatedly refused to acquiesce to requests for permission to search the backpack. On this record and in light of the circumstances under which the Ninth Circuit has found abandonment, the Court concludes the government has not satisfied its burden to prove by a preponderance of the evidence that the search of the backpack without a warrant and without Defendant's consent was justified under any abandonment-of-interest analysis of the Fourth Amendment warrant requirement. *Compare, e.g., United States v. Nordling*, 804 F.2d 1466 (9th Cir. 1986)(court found the defendant abandoned a suitcase when he twice denied ownership and relinquished control of the suitcase by leaving it on the airplane when he disembarked); *Jackson*, 544 F.2d at 410 (court found the defendant had not abandoned a suitcase when he put it down and walked a few steps away from it after being confronted by law-enforcement officers).

Accordingly, the Court concludes the search of the backpack and Defendant's statements during the search that were related to the backpack and its contents were obtained in violation of Defendant's Fourth Amendment rights. The Court, therefore, grants Defendant's Motion to Suppress.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion to Suppress Evidence and Statements (#15).

IT IS SO ORDERED.

DATED this 22nd day of September, 2006.

                        /s/ Anna J. Brown
                        ANNA J. BROWN
                        United States District Judge